UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VERONDA and TIMOTHY W. DOUGAN,  Plaintiffs,  v.  RENAE and JOSEPH NUNES,  Defendants. | HONORABLE JOSEPH E. IRENAS  CIVIL ACTION NO. 08-268 (JEI/KMW)  **OPINION** |

**APPEARANCES:**

LAW OFFICES OF ERIC LAVDAS, P.C.
By: Eric Lavdas, Esq.
5 Split Rock Drive
Cherry Hill, NJ 08003
     Counsel for Plaintiffs

HOAGLAND, LONGO, MORAN, DUNST, & DOUKAS, LLP
By: John C. Simons, Esq.
40 Patterson Street, PO Box 480
New Brunswick, NJ 08903
     Counsel for Defendants

**IRENAS**, Senior District Judge:

Presently before the Court are Defendants' Motion for Summary Judgment (Docket No. 12) and Plaintiffs' Cross-Motion for Summary Judgment on Liability (Docket No. 14). The Court has reviewed submissions of the parties, and for the reasons set forth below, Plaintiffs' Motion for Summary Judgment on Liability will be granted, and Defendants' Motion for Summary Judgment will

be denied.[1]

**I.**

This case arises from a dog owned by Defendants Renae and Joseph Nunes (collectively, "Defendants") biting Plaintiff Veronda Dougan. Plaintiffs Veronda and Timothy Dougan (collectively, "Plaintiffs") own a female Rottweiler named Dixie whom they sought to breed. (Def. R. 56.1 Stat. at ¶ 1.) They contacted a professional Rottweiler breeder, Antoinette Coviello, to locate a male candidate for breeding. (Id. at ¶ 2.) Coviello referred Plaintiffs to Defendants, who owned a male dog named Einstein that they had already used for breeding three times. (Id. at ¶ 3.) Coviello, who did not charge a service fee for creating the connection, told Plaintiffs that Defendants "seemed to be nice people," and she believed it would not be a problem to breed the two dogs. (V. Dougan Depo. at 14:19-21, 21:7-9.)

Plaintiffs and Defendants discussed the arrangements for breeding their dogs through emails and phone conversations. (Id. at 18:12-15.) Plaintiffs informed Defendants that they were unfamiliar with the breeding procedure, and Defendants assured Plaintiffs that they had experience and would guide Plaintiffs through the process. (Id. at 22:8-16.) The parties eventually agreed to have Defendants bring Einstein to Plaintiffs' house to

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

breed with Dixie later in the week.  (Id.)  The parties never reached a formal agreement concerning payment to Defendants, but they verbally agreed that if Dixie took, Defendants would receive their pick of the litter.  (T. Dougan Depo. 26:9-15.)

On February 4, 2006,[2] Defendants brought Einstein to Plaintiffs' house, and the dogs mated once during the day.  (Def. R. 56.1 Stat. ¶ 6.)  Plaintiffs planned to have guests at their house later in the afternoon, so Defendants agreed to leave. However, Defendants told Plaintiffs that the dogs usually needed to mate at least twice for the insemination process to take effect, and they insisted that Einstein remain at Plaintiffs' house until the next morning.  (V. Dougan Depo. at 29:24-31:24.) Plaintiffs eventually permitted Defendants to leave Einstein overnight because Defendants convinced them that Einstein had no visible aggression issues, and Defendants insisted that they had followed the same procedure on three previous occasions.  (Id. at 31:25-32:15.)

The dogs mated a second time after Plaintiffs' guests had left.  (T. Dougan Depo. 32:2-4.)  That evening, at around 6:30 p.m., Plaintiff Timothy Dougan sat at the foot of his bed while

---

[2] The Complaint and both parties' briefs indicate February 4, 2006, was the date of the incident.  However, multiple questions during Plaintiffs' deposition by Defendants' counsel refer to February 6, 2004.  After examining all the submitted materials, it is clear that February 4, 2006, is the actual date of the incident, and references to February 6, 2004, are incorrect.

Einstein rested his head on Timothy's lap.  Plaintiff Veronda Dougan went to kiss her husband on the bed, and Einstein bit Veronda's face.  (Id. at 37:10-20.)  Timothy drove Veronda to the hospital, and doctors administered two shots of antibiotics to Veronda before giving her 34 stitches.  (V. Dougan Depo. at 50:1-9.)

Plaintiffs submitted a two-count Complaint on January 14, 2008.  Count I asserts that Defendants are liable to Plaintiff Veronda Dougan under New Jersey's strict liability statute, N.J. Stat. Ann. § 4:19-16, for damages due to physical injuries, emotional harms, and disruption of her daily activities.  (Compl. at ¶ 6.)  Count II asserts that Defendants are also liable to Plaintiff Timothy Dougan under N.J. Stat. Ann. § 4:19-16 for damages because he has been deprived of his wife's society, services, and consortium.  (Id. at ¶ 9.)[3]

**II.**

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[3] Counts I and II both specifically allege that the bite was "a result of the negligence, carelessness and liability pursuant to N.J.S.A. 4:19-16 of the defendants . . . ." (Compl. at ¶¶ 6, 9.)  However, Plaintiffs make no mention of negligence in their papers in support of their Motion for Summary Judgment.  As such, the Court concludes that Plaintiffs are only pursuing liability under N.J. Stat. Ann. § 4:19-16.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### III.

Plaintiffs argue that New Jersey's strict liability statute applies to this case. *See* N.J. Stat. Ann. § 4:19-16. The statute states:

5

> The owner of any dog which shall bite a person while such person is on or in a public place, or lawfully on or in a private place, including property of the owner of the dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.

N.J. Stat. Ann. § 4:19-16.

For a defendant to be liable under this statute, (1) "the defendant must be the owner of the dog," (2) "the dog must have bitten the injured party," and (3) "the bite must occur 'while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of the dog.'" *DeRobertis v. Randazzo*, 94 N.J. 144, 151 (1983) (quoting N.J. Stat. Ann. § 4:19-16).

All parties agree that (1) Defendants are the owners of Einstein, (2) Einstein bit Plaintiff Veronda Dougan, and (3) the bite occurred while Plaintiff was lawfully in her own house. Therefore, Defendants are liable so long as the statute applies. However, Defendants assert that Plaintiffs were independent contractors who assumed the risk of potentially being bitten by Einstein, and, as such, cannot be held strictly liable.

Defendants rely on *Reynolds v. Lancaster County Prison*, 325 N.J. Super. 298 (App. Div. 1999). In *Reynolds*, a dog handler worked as an independent contractor for a company that owned dogs which it rented to other businesses to secure their premises at night. He was bitten by a dog which escaped from the kennel

6

after being placed there by the handler, and he sued the company under N.J. Stat. Ann. § 4:19-16. The court held that "in ordinary circumstances, when a dog is delivered for care to an independent contractor the owner is entitled to rely on the doctrine of primary assumption of the risk." *Reynolds*, 325 N.J. Super. at 323. In reaching this holding, the court relied on a California case,[4] which held that "a veterinarian or a veterinary assistant who accepts employment for the medical treatment of a dog, aware of the risk that *any* dog, regardless of its previous nature, might bite while being treated, has assumed this risk as part of his or her occupation." *Nelson v. Hall*, 211 Cal. Rptr. 668, 673 (Cal. Ct. App. 1985).

The California Supreme Court has since extended the application of the primary assumption of risk doctrine to include a kennel worker bitten by a pit bull left by the owner with a kennel "in the business of kenneling" for boarding. *Priebe v. Nelson*, 140 P.3d 848, 859 (Cal. 2006). The court reasoned that a dog owner should not be strictly liable for damages to kennel workers "where the dog owner has completely relinquished the care, custody, and control of his or her dog to a . . . professional trained to care for and safely handle dogs . . . ." *Id.*

---

[4] California's strict liability statute is substantially similar to New Jersey's. *See* Cal. Civ. Code § 3342.

In these cases the victims were experienced in the care and handling of dogs and held themselves out to the public as skilled in these activities.  To the contrary, Plaintiffs neither had any special skills in this area nor publically marketed themselves as having such expertise.  The parties' relationship was a simple agreement to breed their dogs.  No formal contract existed, and Plaintiffs expressly notified Defendants that they were not experts at handling dogs.  (*See* V. Dougan Depo. at 22:14-16.) The parties agree that Plaintiffs had no prior experience breeding dogs, while Defendants had previously used Einstein for breeding.  (Id. at 17:19-21.)

Defendants argue that Plaintiffs took Einstein for the night for the sole purpose of producing a litter for their monetary benefit.  However, nothing in N.J. Stat. Ann. § 4:19-16 suggests that a plaintiff is barred from recovery because the informal agreement to breed Dixie and Einstein might result in an economic benefit to either or both parties.  The parties agreed to bring their respective pets in close enough proximity to let nature take its course.  Plaintiffs' however, offered no service to defendants which bespoke any skill or aptitude in the care, handling or breeding of Rottweilers.

Defendants argue that because Plaintiff Veronda Dougan had owned between 15 and 20 dogs in her lifetime, she should have been well aware of the potential risks of handling dogs.  (Id. at

8

12:1-4.)  However, she did not handle dogs as part of her occupation, nor did she regularly handle dogs at the time of the incident other than the one she owned as a pet.  *Compare*, *Reynolds*, *Priebe*, and *Nelson*.

Plaintiffs were certainly not breeding Dixie and Einstein according to some expertise they had previously developed, nor were they engaged in the business of dog breeding.  Rather, they relied on advice from both Coviello and Defendants who had such prior experience.  (V. Dougan Depo. at 14-16, 22:1-5, 31-33.)  Even assuming, *arguendo*, that the New Jersey Supreme Court would adopt the exception articulated in *Reynolds*, *Nelson*, and *Priebe*, the essential element of those decisions, that the plaintiffs had special skills in the care and handling of dogs which were commercially offered to the public, is not present in this matter.

**IV.**

Defendants maintain that even the Court grants summary judgment in favor of Plaintiffs on the assumption of the risk issue, Defendants are still entitle to assert the affirmative defense of comparative negligence.[5]  Comparative negligence may

---

[5] It should be noted that while Defendants do assert comparative negligence as an affirmative defense in their Answer, at no point in their moving brief to they address the issue.  Nor do Plaintiffs address the issue in either of their briefs.  In fact, the only mention of comparative negligence in the briefing

indeed be a defense to cases brought under N.J. Stat. Ann. § 4:19-16. *Pingaro v. Rossi*, 322 N.J. Super. 494 (App. Div. 1999), *Budai v. Teague*, 212 N.J. Super. 522 (Law Div. 1986). However, unlike typical claims of comparative negligence, in the strict liability setting, a defendant must prove that the "plaintiff knew the dog had a propensity to bite either because of the dog's known viciousness or because of the plaintiff's deliberate acts intended to incite the animal." *Budai*, 212 N.J. Super at 525.

In this case, viewing the evidence in the light most favorable to Defendants, there is nothing in the record that would indicate that Plaintiffs either knew that Einstein had a propensity to bite, or that they had any intent to incite Einstein either while petting him, or when Veronda Dougan went to kiss her husband. At best, Defendants could argue that Plaintiffs were warned by Coviello not to let Einstein spend the

---

of the instant Cross-Motions is the following typo-ridden sentence, made in passing, from Defendant's Brief in Opposition to Plaintiffs' Motion: "In the event, [sic] the Court grant's [sic] Plaintiffs' motion, Defendants' [sic] maintain the common law claim for comparative negligence." (Def. Op. Br. at 5.) While neither party actually makes an attempt to brief the issue of whether New Jersey's Comparative Negligence Act, N.J. Stat. Ann. § 2A:15-5.1-5.3, applies to the strict liability dog bite statute, or whether Defendants have satisfied their burden of proving comparative negligence, the Court will nonetheless address the issue because, based on the proposed order provided along with their Motion, Plaintiffs are seeking summary judgment on the entire issue of liability, and not just whether the defense of assumption of the risk is available in this case.

night, and were thereby voluntarily exposed themselves to a known risk. However, this argument fails for several reasons. First, nowhere in the record does it indicate that Plaintiffs were told why they should not let Einstein spend the night. (V. Dougan Depo. at 15:12-20; T. Dougan Depo. at 16:13-25.) Furthermore, despite Coviello's warning and Plaintiffs' initial reluctance, they ultimately permitted Einstein to stay the night because Defendants' urged them to do so based on their prior experiences and because Einstein had not exhibited any signs of aggression in Plaintiffs' presence. (V. Dougan Depo. at 31:7-32:19.)

Even accepting that Plaintiffs were warned by the breeder not to permit a sleep-over, they were given no reason for this, and the warning was ignored solely as a result of Defendants' representations. At most, this could constitute simple negligence, which is not sufficient to survive summary judgment. *See Pingaro*, 322 N.J. Super at 525 (holding that "there is no basis in law to submit the issue of plaintiff's negligence to the jury" when there was no evidence that plaintiff incited the dog or "voluntarily or unreasonably exposed herself to a known risk."), *Budai*, 212 N.J. Super. at 526 (holding that "mere negligence" from touching the dog's ear when it appeared irritated was insufficient to overcome summary judgment); *Mayer v. Mascarehas*, No. 08-3323, 2009 WL 2390223, at \*2 (E.D. Pa. Aug. 4, 2009) ("Even accepting Defendant's contention that Plaintiff

11

grabbed the dog's face when she sought to pet it, this at most constitutes negligence, which is insufficient to preclude summary judgment.") (applying N.J. Stat. Ann. § 4:19-16).

**V.**

For the reasons stated above, Plaintiffs' Motion for Summary Judgment on Liability will be granted, and Defendants' Motion for Summary Judgment will be denied.  The Court will issue an appropriate Order.

Dated: August 19, 2009

                                         s/ Joseph E. Irenas
                                        **JOSEPH E. IRENAS, S.U.S.D.J.**